## Hoxie *vs.* Hoxie and others.

Where a testator devised his residuary estate, to be equally divided among the children of his two brothers and his sister, when they should severally become of age; *Held,* that the children of the brothers and sister in esse at the death of the testator, took immediate vested estates in possession, as tenants in common, and that the vesting of the estate of each did not depend upon the contingency of his or her arriving at the age of twenty one.

The construction of a will must depend upon the intention of the testator, to be ascertained from a full view of every thing contained in it. And where it is evident that the testator meant that the heir at law, or any other person, should take the legal estate for the benefit of the real devisee, the court will consider the estate as devised in trust for the latter, although no formal words of devise to the trustee are used.

Where it is clear that the testator intended a person in esse and capable of taking the legal estate at the time of making the will should have the whole beneficial interest in the estate, during his minority as well as afterwards, if there is nothing in the will indicating an intention to give the legal estate to another in trust for him during such minority, the court will construe it as a devise of the legal estate, to be vested in possession in him immediately, and to be taken care of for him by his legal guardian until he is of age.

Where a defendant pleads in bar of a bill for partition that a third person, not a party to the suit, has an interest in the premises as tenant in common, and the plea upon an issue joined thereon is overruled as false, it seems the defendant cannot raise the same question again, by an exception to the master's report upon the title.

THE bill in this cause was filed before the vice chancellor May 1. of the fifth circuit for the partition of lands. The defendant John Hoxie plead that the children of Rhoda Delancy were interested as tenants in common in the premises, who were made parties to the suit; to which plea the complainant replied, taking issue thereon. The other adult defendants having suffered the bill to be taken as confessed, and the infants having put in a general answer by their guardian ad litem, a reference was made to a master, under the 177th rule, to take proof of the complainant's title and interest in the premises, and of the several matters set forth in his bill, and to ascertain and report the rights of the several parties in the premises. The proofs were also regularly closed as to the defendant John Hoxie, and his plea was afterwards, upon such proofs, overruled as false. The master reported

1838.

Hoxie
v.
Hoxie.

that the rights of the several parties in the premises were as set forth in the complainant's bill ; and that the premises were so situated that a partition thereof could not be made without great prejudice. The defendant John Hoxie excepted to the master's report, and by his exceptions attempted to raise the same question which was raised by his plea, which had been overruled as false. He also excepted to the report on the ground that the three infant children of Solomon Hoxie had not vested interests in the property, under the will of their uncle, from whom the title was derived. The vice chancellor, upon the hearing of the exceptions, allowed that part of the exceptions which related to the interest of the infant children of S. Hoxie in the premises ; and decided that the heir at law was a necessary party, and that the bill was therefore defective in form and substance. The cause was thereupon ordered to stand over, with leave to the complainant to amend his bill. From this part of the decision of the vice chancellor the complainant appealed.

The following opinion was delivered by the vice chancellor, upon the exceptions :

DENIO, V. C. It is satisfactorily shown, by the depositions in this cause, that Rhoda Delancy, mentioned in the plea of John Hoxie, is a natural, and not a legitimate child of John Hoxie. She was begotten and born before the intermarriage of the latter with his wife. The general rule unquestionably is, that where a devise is made in terms to *the children* of another, legitimate children only are meant, unless there is something upon the face of the will, or in the circumstances of the family who are the objects of the testator's bounty, to show that a different rule ought to prevail. (1 *Mad. Rep.* 430. 2 *Paige,* 11.) For instance, as in the case last cited, where the devise was to the testator's son, by name, and his two daughters, and he had a son of that name and two daughters, for whom he provided, but who were illegitimate, and the testator had no legitimate offspring, it was correctly held, that the illegitimate children took under the will. In the case before me there are no

1838.

Hoxie
v.
Hoxie.

circumstances which show that the testator designed to give a different import to the words which he made use of to denote the recipients of his favor from the meaning which the law affixes to them, and I am not at liberty to resort to vague conjecture. It is true, this daughter was brought up with the other children of John Hoxie, and recognized as their sister, to the knowledge of the testator. And I know of no reason which he could have had to exclude her from a share in his property. Still he has used language which does exclude her, and I have no power to change or alter it. The plea is not therefore sustained.

That portion of the exception to the master's report which objects that " according to the said will the interests of some of the said parties have not yet vested in them," is well taken. The devise in the will of Luke Hoxie, to the children of his sister Mary, and of his brother Solomon, and his brother John, is an executory devise, to take effect as the devisees severally come of age. At the death of the testator, the estate (except as to the portions of those of the devisees who had arrived of age, if any of them had then reached that age) descended to the heirs at law of the testator. The heirs, however, take as trustees for the persons who shall eventually become entitled to the estate, and they are bound to account for the rents and profits, and are subject to be displaced as trustees for misconduct or want of responsibility. (*Rogers* v. *Ross*, 4 *John. Ch. Rep.* 388. *Jackson* v. *Winnie*, 7 *Wend.* 47.) As fast as the devisees arrive at the age of twenty-one, the estate vests as to those so coming of age, and those who have vested estates are, as I suppose, entitled to have a partition.

As to those who have not yet come of age, they have no estate, but only a *possibility*. If they shall die under age, the shares which they would have taken descend, or rather, having descended at the testator's death, vest beneficially as well as legally in the heirs at law.

The bill of complaint in this cause assumes that all the children of the testator's sisters and brothers referred to in the will took, by the will, vested estates in the premises of which partition is sought, and are tenants in common of

equal shares. From what has been said it is apparent that this is an erroneous view of the case. The bill of complaint shows that three of the devisees were, at the time when it was pleaded, under age. Those persons, upon the principles before mentioned, had no estate in the premises.

The complainants therefore are not entitled to any decree in the present state of the case. I suppose that upon a bill properly framed partition might be made of the premises, or of the proceeds after a sale thereof, among the devisees who are of age, and the grantees of those who have conveyed, and that (in case of a sale) the proceeds of that portion of the premises the title to which is contingent might be invested, under the authority of the court, for the benefit of the persons who should eventually become entitled. But the bill must set out the title of the parties truly, and the heirs at law must be made parties in their character of heirs.

The order will declare the exception to the master's report to be well taken, that the plea is untrue and is not supported by the evidence which has been taken, and that the same is overruled; but that inasmuch as it appears that the proper parties are not before the court, to enable it to proceed to order partition to be made of the premises therein mentioned, and that the bill of complaint is defective in form and substance, the cause do stand over to enable the complainant to procure the said bill to be amended in case he shall be advised so to do; and that in case said complainant does not proceed to procure such amendments within a reasonable time, the defendants may move at some subsequent motion day or term, for a decree, dismissing said bill, with costs; that in case said amendment shall be made, and said cause be proceeded in, no interlocutory costs be taxed against either of the parties upon said plea or exceptions; and that in case of such amendment being made, the defendant John Hoxie may insist, by way of answer, upon the matter contained in his said plea.

*A Thompson*, for the complainant.

*M. T. Reynolds*, for the defendant J. Hoxie.

The CHANCELLOR.   Under the circumstances of this case I am inclined to think the defendant J. Hoxie, who had put in a plea to the whole bill, was not entitled to except to the master's report.   Issue having been joined upon his plea, if that issue should be found in his favor the bill would be dismissed as of course ; and if the plea was overruled as false, the bill as to him was admitted to be true, and was to be taken as confessed.   But as that question does not appear to have been considered before the vice chancellor, I shall not pass upon it here.   The real question presented upon this appeal is, whether the nephews and nieces of Luke Hoxie took vested estates *in præsenti* in his residuary estate, under his will, or whether there was an interest undisposed of during their minorities which is now vested in his heirs at law.   This must depend upon the construction of the will itself when taken in connection with certain provisions of the revised statutes.   The premises in question are a part of the residuary estate of the testator, who died in 1830. After devising and bequeathing a portion of his property among his relatives, he gave the residue of his estate to the children of his brothers and sisters, by the following residuary clause in his will :  " Also that the remainder of my " property, after paying the charges incident to my sickness, " and after releasing one year's rent to M. & F. of the farm " they now occupy, to be divided equally among the chil- " dren of my sister Mary, my brother Solomon and my " brother John, when they shall severally become of age."

The vice chancellor arrived at the conclusion that, under this will, the several minor children of the brothers and sister of the testator took mere contingent interests, by way of executory devise, in the residuary estate ; depending upon the contingency of their arriving at the age of twenty-one respectively ; and that in the mean time the legal estate descended to the heir at law of the testator.   In this I think he was clearly wrong.   Even before the revised statutes a future estate was not contingent where the devisee was in esse and ascertained at the death of the testator, and where nothing could prevent the estate from vesting in possession if the devisee lived until the time appointed for that purpose.

The estate or interest, therefore, which was given to the infant devisees in this case was a vested estate, which upon the death of the devisee under age would have descended to his own children, or heirs at law, and not to the heirs of the testator. The estate is not given to them *if* they shall arrive at the age of twenty-one, but it is to be divided among them *when* they respectively attain the age of twenty-one. In the case of *Rogers* v. *Ross*, (4 *John. Ch. Rep.* 388,) the court appears to have supposed that when the enjoyment of the estate was postponed during the minority of the devisee of the whole residuary interest, the heir at law would take the legal estate in the mean time in trust for the infant, although the infant devisee was himself in existence and capable of taking an immediate vested interest. The decision of that question, however, was not necessary in the case then before that court; as the only material enquiry there was, whether the infant devisee was entitled to the beneficial interest in the rents and profits of the estate during the suspension of the absolute right of enjoyment. In the case of *Farmer* v. *Francis*, (2 *Bing. Rep.* 151,) upon a case sent from the vice chancellor to the common pleas, which was very much like the one under consideration except that the legal estate was devised in terms to trustees, the court held that the legatees took the whole beneficial interest in the rents and profits during their minority, and that if it had not been for the intervention of the trustees the legal estate would in the mean time have vested in the infant devisees, instead of the heir at law. In that case as in this, the residuary estate was to be *divided*, share and share alike, between the devisees in remainder who should be living at the death of their mother and grandmother, *when and as they should respectively attain the age of twenty-one years.*

The construction of a will must depend upon the intention of the testator, to be ascertained from a full view of every thing contained within the four corners of the instrument. And where, from the will itself, it is evident that the testator meant that the heir at law, or any other person, should take the legal estate for the benefit of the real devisee, the court will consider the estate as devised in trust, although

no formal words of devise to the trustee are used. But where it is clear that a person in esse, and capable of taking the legal estate at the time of making the will, was intended to have the whole beneficial interest in the estate during his minority, as well as afterwards, and there are no words in the will indicating an intention to give the legal estate in trust to another person for his use, I can see no good reason for giving the legal estate to the heir at law, as the trustee for the infant, instead of giving it to the infant himself to be taken care of in the mean time by his legal guardian. In this case there is no doubt that the testator intended his nephews and nieces should have the whole beneficial interest in his residuary property, from his death, to be set off to them, or put into their actual possession, when they should respectively attain the age of twenty-one. But he does not appear to have had any definite idea as to where the legal title should remain in the mean time. And as this will was made since the adoption of the revised statutes, it would be wrong to give it such a construction as to create an illegal trust, and thereby to defeat the object of the testator, when by construing it as an immediate devise to the objects of his bounty the devisees will take the same legal and equitable interest in the property which he intended they should have. If Chancellor Kent was right in supposing that the heir at law, in a case of this kind, would by the common law take the legal estate, by implication, as a naked trustee for the devisee, then the operation of the 45th and 47th sections of the article of the revised statutes relative to uses and trusts, (1 *R. S.* 727,) converted the whole beneficial interest in the subject of the devise into a legal estate in the devisees. The 45th section provides that every estate and interest in lands shall be deemed a legal right, cognizable as such in courts of law, except when otherwise provided for in that chapter of the revised statutes. And by the 47th section the person entitled to the actual possession of land and to the rents and profits thereof, by virtue of any grant, assignment or devise, has a legal estate in the land, of the same quality and duration and subject to the same conditions as his beneficial interest. As this is not the case of an express trust, within

any of the subdivisions of the 55th section of that article, it seems to follow that the devisees have a legal estate in the rents and profits of the premises, during their respective minorities, to the extent of the beneficial interest in the property which the testator intended to give to them by his will.

Again, if the testator intended to give to the nephews and nieces who were under age at the time of his death future estates in his real property, to vest in possession upon their attaining the age of twenty-one, the law has given to them the rents and profits of the premises in the mean time, as the persons presumptively entitled to the next eventual estate. I am satisfied, however, that in this case the will of the testator cannot be carried into effect, under the provisions of the revised statutes, according to his intent appearing from the will itself, in any other way than to consider the infant devisees as taking the legal estate, in their several shares, from the death of the testator ; but to be held as tenants in common among those who were under twenty-one until they should respectively attain to that age. And that the testator contemplated some process by which the share of each devisee in the real estate was to be partitioned off to him when he became of age, in the same manner as the executors would under his will be bound to assign to him his share of the personal estate at that time. The result, therefore, is that no interest in the testator's property, legal or equitable, descended to the heir at law, and that the master's report was right in declaring that the rights and interests of the several parties in the premises were as set forth in the complainant's bill. So much of the decree of the vice chancellor as allows any part of the exception to the master's report, and as declares that the proper parties are not before the court and that the bill is defective in form and substance, together with the consequential direction founded upon such erroneous conclusion of the vice chancellor, must be reversed with costs, to be paid by the defendant John Hoxie. And the exceptions to the master's report must be overruled with costs, and the report confirmed. As it appears by the report of the master that a sale will be necessary, there must be a further reference to him to en-

quire and report as to general liens ; to the end that on the coming in and confirmation of that report, such decree for the sale of the premises may be made as may be just. All further questions and directions are in the mean time reserved ; and the proceedings are remitted to the vice chancellor of the fifth circuit, so that this decretal order may be carried into effect before him.