## TRUFANT v. NUNNELEY.

**WILLS—PERPETUITIES.**

> A testator gave a life estate in specific tracts of land to each of his three children, with remainder over in each case to the "body heirs" of all of such children, share and share alike. *Held*, that, since such heirs could not be determined until the death of all three children, and in the meantime there would be no persons by whom an absolute fee could be conveyed, the power of alienation was suspended for a longer period than two lives in being, and the remainders were therefore void, under 2 How. Stat. §§ 5530, 5531.

Appeal from Macomb; Eldredge, J. Submitted June 11, 1895. Decided October 1, 1895.

Bill by John R. Trufant against Julia Florence Nunneley and others to construe the will of Emery Trufant, deceased. From a decree for defendants, complainant appeals. Reversed.

The provisions of the will were as follows:

"I, Emery Trufant, considering the uncertainty of life and the certainty of death, do make, publish, and declare this my last will and testament, in manner following, that is to say:

"*First.* I direct that all my debts and all expenses pertaining to the settlement of my estate be paid from my personal estate.

"*Second.* I give to my beloved wife, Charlotte, the direction and control of all my real and personal estate so long as she shall live, subject to the uses hereinafter created and made.

"*Third.* I give and bequeath to my said wife the use of all my personal estate so long as she shall live, subject to the annual payment to my son, John R. Trufant, and my daughters, Julia Florence and Alice Maude, of the sum of five hundred dollars each; and the above bequests to my said wife are in lieu of dower, or of any and all rights and interest which she could or might receive under the statutes of this State in and to my estate.

"*Fourth.* I give, bequeath, and devise to my said son, John, the use during his life of those certain lands in the township of Clinton, in said county, consisting of about one hundred and nine acres of cleared land, on which I now live with my family, and also give, devise, and bequeath to my said son, John, the use during his life of the north-east quarter of the north-west quarter of section twenty-six in said township, being town two north, range thirteen east, with right of way to and from the same for the purpose of drawing such firewood as said son may need for the use of his family, and such timber as he may require for repairs and for building fences and buildings upon the one hundred and nine acres aforesaid; the use in the said forty acres of timber being given and created for and restricted to those purposes.

"*Fifth.* I give and bequeath to my daughter Julia Florence the use during her life of those certain lands in said township known as thirteen acres situate in the

south-west corner of section twenty-three, and also the west half of said north-west quarter and the southeast quarter of the said north-west quarter of said section twenty-six.

"*Sixth.* I give and bequeath to my daughter Alice Maude the use during her life of farming lands equal in value to that last above described (the use of which has been given to my daughter Julia Florence), and in case I should not be the owner in fee of such farming lands of equal value suitable for a home and farming purposes in the State of Michigan, then and in that case I direct my said wife, Charlotte, to select and purchase suitable and sufficient for that purpose, that my said daughter Alice may have the use and benefit during her life of real estate equal in value and productiveness to that of my said daughter Julia Florence; and should the lands for such use be purchased by my said wife as above provided for, I direct it to be so taken as to give Alice Maude a life estate in the said lands, with remainder over to the body heirs of my said son, John, and daughters, Florence and Alice.

"*Seventh.* I hereby give and grant unto my said wife, Charlotte, full power and authority to sell and convey any and all real estate of which I may die seised and possessed (other than that hereinbefore specifically described, of which the use is given to my said son and daughters) when, in her opinion, it is expedient or advisable so to do. And I give and grant unto my said wife, Charlotte, full power and authority to sell and convey any and all personal estate, of whatever nature and character, and to collect and discharge any and all bonds, mortgages, or other evidences of indebtedness, and to receive the money and proceeds so arising from such sale of real and personal estate, or from such or any collections made by her, and to invest any or all moneys received by her in stocks, bonds, mortgages, and other evidences of indebtedness, in such amounts and in such maintenance as may seem to her most judicious, expedient, profitable, and safe.

"*Eighth.* All my personal estate I give and bequeath to my said son, John, and my said daughters, Florence and Alice, share and share alike, subject, however, to the use, control, and trust above provided for and created.

"*Ninth.* The real estate of which I may die seised and possessed remaining unsold at the death of my said wife, Charlotte (save and except that above specifically described, and the use of which has been given to my said son and daughters during their lives), I give and devise to my said son, John, and my daughters, Julia Florence and Alice Maude, share and share alike.

"*Tenth.* The real estate above specifically described, and such, if any, as may at any time hereafter be purchased for the use of my said daughter Alice Maude, as hereinafter provided for, I give and devise to the body heirs of my said son and daughters, share and share alike.

"*Eleventh.* I direct my said son and daughters to pay all taxes and assessments of whatever nature and character which may at any time be levied and assessed upon the lands used and occupied by them respectively.

"*Twelfth.* Should it so happen that my said son or either of my said daughters should die without issue before my said wife, Charlotte, then and in that case I give the use of the real estate hereinbefore given to such son or daughters to my said wife, Charlotte, during her life, with remainder over to the body heirs of my said son and daughters, share and share alike.

"*Thirteenth.* If, in the providence of God, it should be so declared that my said son and daughters should each and all die, leaving their mother them surviving, and leaving no body heirs, then, on the determination of the use and trust hereinbefore created in my said wife, Charlotte, by her death, I give, bequeath, and devise my real and personal estate to the heirs of my said wife, Charlotte.

"*Fourteenth.* In case of any loss by fire or otherwise, so that the income, profit, and use of said personal estate should fall short of a sum sufficient to make the annual payment of five hundred dollars to my son, John, and my said daughters in any one year, then it is directed that such sum as may be realized by my said wife to enable her to make such payment shall be equally divided between them, that each party shall bear their portion of the deficiency.

"*Fifteenth.* I hereby appoint my said wife, Charlotte Trufant, and my respected brothers-in-law, Samuel M. Gibbs and Albert Kennedy, executors of this my last will and testament.

"In witness whereof I have hereunto set my hand and seal this nineteenth day of July, A. D. 1873.
[Signed]                    "EMERY TRUFANT.    [L. S.]"

*Bowen, Douglas & Whiting,* for complainant.

*Crocker & Crocker,* for defendants.

LONG, J.   Emery Trufant died in Macomb county, this State, April 27, 1875, leaving a last will and testament, a copy of which is set out in the statement. This bill is filed for construction of the will.

The court below was asked by complainant to decree:

1. That the property mentioned and described in the fourth paragraph of the will is by the will given to the complainant for life, and on his death to his issue; but in case of his death without issue, then, subject to a life estate in the defendant Charlotte Trufant, to the issue of his two sisters.

2. That the property described in the fifth paragraph of the will should go to defendant Julia F. Nunneley for life, and, on her death leaving issue, to said issue; but in case of her death without issue, said property, subject to the life estate of the defendant Charlotte Trufant, should go to the issue of complainant and the defendant Alice Maude Schoemaker.

3. That the property purchased by the executors under the instructions contained in the sixth paragraph of said will should go to defendant Alice Maude Schoemaker for life, and, on her death leaving issue, to her issue; but in case of her death without issue, then said property, subject to the life estate of the defendant Charlotte Trufant, should go to the issue of complainant and defendant Julia F. Nunneley.

There is no dispute but that it was the intent of the testator first to devote his estate to the use of his wife, Charlotte Trufant, such use to be subject to the annual payment by her of $500 to each of his three children, the complainant and the two defendants Julia F. Nunneley and Alice Maude Schoemaker; that on the death of his wife all his personal estate and all his real estate, except the three pieces specifically devised to complainant and

the two defendants Julia F. Nunneley and Alice Maude
Schoemaker, was to go to the said three children, share
and share alike. The question is raised as to the tes-
tator's intention regarding the three pieces of real estate
devised to his three children.

The contention of the defendants is that the expres-
sion at the end of the sixth paragraph of the will, to wit:
"I direct it to be so taken as to give Alice Maude a life
estate in said lands, with remainder over to the body
heirs of my said son, John, and daughters, Florence and
Alice;" and the tenth paragraph of the will, to wit: "The
real estate above specifically described, and such, if any,
as may at any time hereafter be purchased for the use
of my said daughter Alice Maude, as hereinafter pro-
vided for, I give and devise to the body heirs of my said
son and daughters, share and share alike;" and the
twelfth paragraph, to wit:  "Should it so happen that my
said son or either of my said daughters should die with-
out issue before my said wife, Charlotte, then and in
that case I give the use of the real estate hereinbefore
given to such son or daughters to my said wife, Char-
lotte, during her life, with remainder over to the body
heirs of my said son and daughters, share and share
alike,"—indicate an intention on the part of the testator
to digress from the manner in which the great bulk of his
estate was apportioned, and adopt a new rule of disposi-
tion for the three pieces of real estate; a disposition
which, defendants contend, would give, on the death of
complainant, the piece of land left him for life, not to
his heirs, but to his body heirs jointly with the body heirs
of his two sisters, Julia F. Nunneley and Alice Maude
Schoemaker.

The argument of counsel for complainant is that, unless
the construction which he asked the court below to give
is placed upon the will, it would be possible that one of
the testator's children, through *his* children, might ob-
tain a far larger share than his equal proportion of the
testator's estate; that, should either of said children have

died before the widow of the testator, the result would have been that the children of that child would be practically homeless, a result not intended by the testator; that, for instance, should Julia F. Nunneley have died before her mother, the property devised to her for life, and of which she is in possession, would be divided equally among the nine grandchildren of the testator, and the two children of Julia F. Nunneley would each receive an undivided one-ninth of the land, or, should Julia F. Nunneley now die, her children would each receive an undivided one-tenth, as, since the filing of the bill, another child has been born to defendant Alice Maude Schoemaker. Complainant further contends that, if this construction cannot be given to the will, then that portion of it must be held void under section 5531, 2 How. Stat., as it creates a restriction upon alienation for a longer period than two lives in being.

The court below made a decree declaring that complainant is entitled to the use during his life of the lands mentioned and described in the fourth clause of the will; that the defendant Julia F. Nunneley is entitled to the use for her life of the lands described and mentioned in the fifth clause; that the defendant Alice M. Schoemaker is entitled to the use during her life of the lands purchased and conveyed in pursuance of the sixth clause; and that, subject to the said life estates, the defendants Emery T. Nunneley, Albert V. Nunneley, Thomas T. Schoemaker, Charlotte T. Schoemaker, Kate T. Schoemaker, Fred T. Schoemaker, Arthur E. Trufant, Kate E. Trufant, John R. Trufant, and Robert Trufant have each an equal undivided vested interest in the remainder of all of said lands, subject to be reopened to let in children hereafter born of the said son and daughters of said testator.

In any view of the case, we are satisfied that the will cannot be sustained as to these three parcels of land. The conditions of this will are such that there is no one who can convey so as to cut off future rights of as yet

unascertained persons; for, until the death of tes- tator's three children, it cannot be ascertained who are the body heirs of these three persons. Complainant's body heirs cannot be ascertained until his death, and so with the body heirs of the daughters. So the estate in these lands is tied up during the life of the son and two daughters, making three lives, and then the remainder over is to the body heirs of all the children of testator. Until all these contingencies happen, there is no person or persons in whom the estate can vest in fee simple absolute, and hence no person in being who could convey. Chapl. Suspen. § 127; *Kilpatrick* v. *Barron*, 54 Hun, 322; *Graham* v. *Fountain*, 2 N. Y. Supp. 598. It follows that the will must be held void as affecting the pieces of land described, and, as to the remainder in them, they must be distributed under the statute.

The decree of the court below must be reversed, and a decree entered here in accordance with these views. The costs of this court and of the court below will be paid out of the estate.

The other Justices concurred.