JAMES E. SCRIPPS CORPORATION *v.* PARKINSON.

1. INJUNCTIONS—RESTRAINING ACTIONS AT LAW—ADEQUATE REM-
EDY—WILLS—VALIDITY.

Where a testator left a void will devising property to de-
fendants' mother for life and restraining the alienation
of the realty in excess of the limitation imposed by 3
Comp. Laws, § 8797 (5 How. Stat. [2d Ed.] § 10637), a
decree of the probate court, consented to by said devisee,
awarding to her a life estate and the remainder to her
heirs, who were not made parties to the partition pro-
ceedings in the probate court, was binding upon her and
upon them, and the probate order limited her estate to
the term of her life so that a later conveyance to com-
plainant passed no interest in the remainder, that would
support an injunction restraining her heirs from prose-
cuting an action of ejectment.

2. SAME—RES JUDICATA.

*Held,* also, that the probate decree was not open to col-
lateral attack in the ejectment proceedings, although it
might have been questioned by timely appeal, if any of
the parties were dissatisfied with the result.

Appeal from Wayne; Van Zile, J. Submitted
January 7, 1915. (Docket No. 25.) Decided June
14, 1915.

Bill by the James E. Scripps Corporation against
Norman Parkinson and Edward A. Parkinson for an
injunction and other relief. From a decree sustain-
ing the demurrer of said defendants, complainant ap-
peals. Affirmed.

*Munro & Powell* and *Jasper C. Gates,* for complain-
ant.

*Oxtoby & Wilkinson,* for defendants.

STEERE, J. This is an appeal from a decree of the Wayne county circuit court, in chancery, sustaining defendant's demurrer to complainant's bill and dismissing the same. Said bill was filed September 6, 1913, to restrain defendants from further prosecuting two actions in ejectment, brought severally by defendants herein to establish their title and obtain possession of two undivided one-sixths of that part of lot 2, block 58, of the Baker farm lying between Michigan avenue and Leverett street in the city of Detroit, according to the recorded plat thereof.

The salient grounds of defendants' demurrer, briefly stated, are that neither fraud, accident, mistake, nor any facts conferring jurisdiction upon a court of equity, or warranting interference to halt an action at law, appear in said bill. The questions raised properly belong to and are triable in the ejectment suits, one of which, as appears by said bill, has already been tried, resulting in a judgment in favor of the plaintiff (a defendant here), which judgment was set aside at the instance of complainant under the statute relative to ejectment, and it also appears affirmatively by said bill that complainant has a complete and adequate remedy at law.

The complications here involved had their inception in the will of Alvah Ewers, the great-grandfather of defendants, who died August 14, 1851, seised of the lot in question, amongst other property not directly involved in this litigation.

Matter helpful to a general understanding of the situation here presented may be found in *Parkinson* v. *Parkinson,* 139 Mich. 530 (102 N. W. 1002), which was a suit in chancery brought by Jane E. Parkinson, the grandmother of defendants, against other heirs of her father, Alvah Ewers, to obtain a construction of his will and to quiet her title as to certain property left by him.

The following concise "findings" of the learned chancellor who heard this case, intermingled with his conclusions of law, will serve sufficiently to disclose the relations of the parties and the questions raised, as well as the reasons of the court for the result reached at that hearing:

"From the bill of complaint it appears that the defendants are now claiming title to certain lands described in said bill of complaint, to wit, each a one-sixth interest in said premises as heirs at law of one Jane Ewers Parkinson, who was a daughter and heir of one Alvah Ewers, deceased, who is the common ancestor and was owner of the lands in question. It also appears that Alvah Ewers made and executed a last will and testament, and on the 14th of August, 1851, died in the city of Detroit; that the will was admitted to probate on the 22d day of September, 1851; that the will of said Alvah Ewers was void, it being in violation of section 8797, 3 Comp. Laws, which does not permit a suspension of the power of alienation.

"By the terms of the will, Jane Ewers was given all the lands of the testator in trust to be used and enjoyed by her until October 17, 1864, when the estate was to be divided, one-third to his wife, Jane Ewers, if then living, for life, the remaining two-thirds to be divided into three parts, the same to go as follows: One-third to his son William Ewers absolutely; one-third to his son Charles Ewers absolutely, and one-third for life to his daughter, Jane E. Parkinson, in the bill of complaint called Jane Ewers Parkinson, the said one-third to her for life, after her death to go to her heirs at law in fee simple.

"The will, being void, affects this case as follows: The one-third for life to Jane Ewers Parkinson became a one-third in fee subject to the dower interest of her mother in the real estate.

"On the 14th of October, 1864, Charles Ewers, one of the sons of Alvah Ewers, deceased, petitioned the probate court of this county to partition the estate of Alvah Ewers according to his will; to the order partitioning the estate all of the heirs, including Jane Ewers Parkinson and the widow, consented. Upon

this petition, proceedings in partition were had, and, following the terms of the will, the commissioners on June 16, 1865, reported that Jane Ewers Parkinson should have a one-third interest in the real estate of Alvah Ewers for life, and to the confirmation of this report made by the probate court, all the heirs, including Jane Ewers Parkinson, consented, William Ewers consenting by his assignee, William C. Duncan.

"The validity and effect of this partitioning of the estate of Alvah Ewers, deceased, was before our Supreme Court in *Parkinson* v. *Parkinson*, 139 Mich. 530, where the court held the acquiescence of Jane Ewers Parkinson to the proceedings and confirmation of the report in partition of the estate precluded her from thereafter asserting a different tenure.

"Jane E. Parkinson died March 1, 1911, leaving as her heirs at law Charles A. Parkinson, a son; Ida J. Parkinson, a daughter, and her two grandsons, Norman Parkinson and Edward A. Parkinson, Jr., sons of Edward A. Parkinson, Sr., who died July 12, 1898, during his mother's lifetime.

"The heirs of Jane Ewers Parkinson were these persons who were her heirs when she died March 1, 1911, viz., Charles A. Parkinson, Ida J. Parkinson, daughter, Norman and Edward A. Parkinson, grandsons.

"The complainant claims title by mesne conveyances from Jane E. Parkinson, who had a life estate and who died March 1, 1911; Edward A. Parkinson, Sr., who died during the lifetime of his mother; the deed of Charles A. and Ida Parkinson, who survived their mother, and whose deeds would operate as a conveyance of their shares.

"I therefore find as matter of law that the defendants have title each to an undivided one-sixth of the lands in question, as heirs at law by Jane E. Parkinson, who died March 1, 1911, and by virtue of the partition decree of the probate court, June 16, 1865, they, the defendants, taking the fee in the portion in which the mother had a life estate at her death."

It is conceded by counsel upon both sides of this case that the will of Alvah Ewers plainly attempts a

suspension of the power of alienation not based upon lives in being, and is therefore void under the restrictions of section 8797, 3 Comp. Laws, as construed in *Casgrain* v. *Hammond,* 134 Mich. 419 (96 N. W. 510, 104 Am. St. Rep. 610).

Counsel for complainant says in his brief:

"It is agreed that so far as this controversy is concerned the will in question must be treated as absolutely void."

Counsel for defendants say:

"We admit that the will of Alvah Ewers was and is absolutely void."

But from this harmonious starting point complainant contends that the foundation of the title defendants seek to assert is necessarily the Alvah Ewers will and the order, or decree, of the probate court purporting to construe that will and partition the estate according to its terms, for which reasons defendants are estopped from questioning the will or relying upon its invalidity and from opposing the construction placed upon said will by the probate court, and "their counsel cannot be permitted to contend that the will is void," while complainant is in position to deny the validity of both, as it makes no claim of title under the probate order construing the same.

It is admitted by counsel for complainant that:

"If the probate order in partition proceedings had been binding upon the Parkinson children and upon complainant as their grantee, then the title of defendants to the land in question would be clear."

Therefore this suit in chancery was brought to attack, and establish the invalidity of, said order in a court of equity, which is the proper and only available forum, because the door is not open to such defense in the actions of ejectment where nothing but

legal titles can be tried, and where the probate order by which defendants' legal title is sustained cannot be questioned collaterally, for which reasons complainant has no adequate remedy at law in defending the ejectment cases against it. While the latter contention is questioned by defendants, we think the rule that probate judgments in partition cannot be collaterally attacked is fairly applicable to the proposed defense, if attempted in the ejectment cases. *Persinger* v. *Jubb*, 52 Mich. 304 (17 N. W. 851) ; *Parkinson* v. *Parkinson, supra;* and *Morrill* v. *Morrill*, 20 Ore. 96 (25 Pac. 362, 23 Am. St. Rep. 95) ; also found in 11 L. R. A. 155, where numerous authorities are cited.

The infirmity charged against the probate order by complainant is that at the time of making said order the three children of Jane Parkinson, Charles A., Edward A. (father of defendants), and Ida, were all minors, and no notice of the proceeding, by citation or publication was given them, nor was any guardian *ad litem* appointed for them, and it is therefore of no binding force or validity as to them, while it is binding upon Jane Parkinson and all claiming under her, conclusively establishing that she never had any title but a life estate in the realty set apart to her, and her interest in it, as also that of any claiming through or under her, ended on her death. To sustain this theory it is contended that, as to her, the probate order by which she is bound related back, speaking and taking effect from the time of the death of her father, as would his will if legal; that "under the law it would have been imperatively necessary that this one-third interest should have been immediately inherited by some one" and, she only receiving a life interest, her infant children, as became manifest at the time she consented to the order, were the only persons who could inherit said third subject

to her life estate, which "destroys the very foundation of counsel's claim that their client in any manner or form obtained title by, through, or under Jane Parkinson." Complainant's counsel are equally positive that their client did not, in any manner or form, obtain title through or under her, as we gather from the following statements in their briefs:

"If Jane Parkinson never had any interest in this property, except a life estate, it is impossible that she should have transmitted any interest in the remainder to these defendants. This for the plain reason that she never possessed any such interest to transmit. It having been authoritatively and conclusively established that she at no time had any interest in this property except a life estate, it is plain that defendants could take nothing from her. It cannot be claimed that she could have transferred anything by deed. If she could not do it by deed, she could not do it by consenting to a probate order.

"We are therefore forced to the conclusion that counsel are in error when they undertake to base their rights upon a supposed transfer from Jane Parkinson to them, through the medium of her consent to this order. But this is precisely what they do claim; and it is on this claim that they base their title. * * * We stand in the shoes of the infant children of Jane Parkinson, who, at the time of the making of the probate order in question, confessedly had an interest in the estate of Alvah Ewers, and who were not made parties to the partition proceedings."

Counsel also state "the order can get no support from the will, for it is admitted that this is absolutely void," and in that connection contend that because said order is void as to complainant's grantees, it became the owner of their remainder by proper conveyances from them. It is unquestionably the law that, upon the death of Alvah Ewers, all his estate was immediately inherited, and title to it vested in some one at that time, but it is clear no title to any of it could

have vested in his daughter's children at the time of his death, because none of them were then born. It is undisputed that if these three children of Jane E. Parkinson were legally interested, or had any property rights in their grandfather's estate prior to or at the time this order of partition was made, it was without jurisdiction as to them and a nullity (*Prince* v. *Clark*, 81 Mich. 167 [45 N. W. 663]); but if they had no interest, neither they nor those holding under them are in a position to question its validity. Their grandfather, Alvah Ewers, died intestate in 1851, over 13 years before the order was made. The will by which he sought to dispose of his estate was concededly void and or no effect. Under the statute of inheritance, title to any real estate he left passed at once to his three surviving children, William, Charles, and Jane (*postea* Parkinson), his heirs, upon whom the law cast the real estate immediately upon the death of the ancestor, subject to his widow's right of dower. His daughter Jane was not then married, and her three minor children, who it is now claimed should have been made parties to the partition proceedings in 1864, were not then in existence.

The fact that Alvah Ewers' widow was permitted to, and did until 1864, control, use, and enjoy his estate which he had vainly sought to give her in trust by his invalid will could not militate against title vesting in his heirs immediately upon his death, according to the law applicable to one dying intestate.

Under the rule laid down in *Casgrain* v. *Hammond*, *supra*, where the subject is fully discussed and numerous authorities cited, the whole scheme of this will for disposition of testator's real property was invalid. The land having been devised for a purpose the law will not permit, on the death of the testator it passes to his heirs, and must be distributed under the statute. In *Parkinson* v. *Parkinson*, *supra*,

wherein this court held that the probate order, or decree, was made binding by her consent and decided her tenure to be but a life estate, though not directly essential to the issue then litigated, it was said:

"Had she raised the question on the proceedings for partition, and appealed from the decree of the probate court, as she might have done under the statute (3 Comp. Laws, § 9458), it is probable that she would have prevailed."

So far as this record discloses, Jane E. Parkinson had a good title to an undivided one-third interest, in the real estate of which her father, Alvah Ewers, died seised, from 1851 until the time of the probate proceedings in 1864, and could, at any time during that period, have conveyed a good title thereto. In the meantime she married and bore the three children, Edward A., Charles A., and Ida. Her control and right to dispose of the property which she inherited from her father were not restricted or affected by the fact that she had children who were her prospective heirs. Their knowledge or consent was not essential to authorize her to mortgage it, lease it, sell it absolutely, or consent to an order, or decree, of partition in the probate court which would limit her to its use and enjoyment for life and restrict it in remainder to those of her children who might be living at her decease. The order to which she consented, and by which this court held she was bound because she consented, was in harmony with the desire of her father as expressed in his void will, but it did not validate the will, nor was it binding on her by reason of the will, for as counsel for complainant well say:

"The order can get no support from the will for it is admitted that this is absolutely void."

By the order in question, making final division of her father's estate, with her consent one-third was

assigned to Jane Parkinson for life, remainder limited to her lawful heirs in fee simple. Her three children as prospective heirs then first became legally interested in their grandfather's estate. Whether any of them would actually be heirs was yet uncertain, for no one is heir of the living. The nature and validity of the two estates thus created out of this one-third, one in possession and one in expectancy, only suspending alienation for one life in being, are too well settled in this State by statute and decision to require discussion.

We are well satisfied that Jane Parkinson's three children (her heirs apparent) are not shown to have had any legal interest in their grandfather's estate prior to the probate order, or decree, in question, and the same is not open to attack on the ground that they were not made parties in the partition proceeding.

The decree sustaining defendants' demurrer and dismissing complainant's bill is affirmed, with costs.

BROOKE, C. J., and McALVAY, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.